332 F.3d 85
 In Re: Vytautas VEBELIUNAS, Debtor.
Roy Babitt, Plaintiff-Appellee,
Citibank, N.A., Chase Manhattan Bank, Defendants-Appellees,
v.
Vanda Vebeliunas, individually, Vanda Vebeliunas, as trustee of an Irrevocable Vart Trust, Defendant-Appellant,
Vytautas Vebeliunas, Vytautas Vebeliunas, as trustee of a Revocable Vart Trust, Daniel Lipman, Melissa Lipman, Defendants,
Roy Babitt, Trustee.
 Docket No. 02-5017.
 United States Court of Appeals, Second Circuit.
 Argued: February 4, 2003.
 Decided: June 13, 2003.
 
 COPYRIGHT MATERIAL OMITTED Jon D. Kaplon, Brauner, Baron, Rosenzweig & Klein, LLP, New York, New York for Plaintiff-Appellee-Trustee Roy Babitt.
 Jerome M. Lasky, Moses & Singer, LLP (Joel David Sharrow & Alan E. Gamza, on the brief), New York, New York for Defendant-Appellee Citibank, N.A.
 Matthew Dollinger, Dollinger, Gonski & Grossman (Leslie A. Foodim, on the brief), Carle Place, New York for Defendant-Appellee Chase Manhattan Bank.
 Peter A. Bee, Bee Ready Fishbein Hatter & Donovan, LLP (Anthony V. Merlino, on the brief), Mineola, New York for Defendant-Appellant Vanda Vebeliunas, individually, Vanda Vebeliunas, as Trustee of an Irrevocable Vart Trust.
 Before: JACOBS, POOLER, SOTOMAYOR, Circuit Judges.
 POOLER, Circuit Judge.
 
 
 1
 Vanda Vebeliunas appeals from the judgment of the United States District Court for the Southern District of New York (Loretta A. Preska, District Judge), acting in its capacity as an appellate court in a bankruptcy case, affirming in part and reversing in part the judgment of the United States Bankruptcy Court for the Southern District of New York (Richard L. Bohanon, Bankruptcy Judge) that two properties, "Lattingtown Estate" and "Lot 384," that were held in a trust should not be considered part of the bankruptcy estate of Vytautas Vebeliunas ("debtor"), who defaulted on two loans he obtained by misrepresenting his ownership of Lattingtown Estate. The district court held that the alter ego theory of piercing applies to irrevocable trusts as a matter of law and that the trustee, Chase, and Citibank (collectively, "the appellees") had satisfied the test established by Morris v. New York State Department of Taxation & Finance, 82 N.Y.2d 135, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993), which is typically used to pierce the veil of a corporation. Accordingly, the district court held that Lattingtown Estate should be treated as part of the bankruptcy estate. However, the district court affirmed the bankruptcy court's ruling that Lot 384 should not be included in the bankruptcy estate, and the disposition of that property is not on appeal.
 
 
 2
 Vanda Vebeliunas appeals the district court's decision. We find that the district court erred in holding that the trust at issue could be pierced based upon debtor's conduct because Vanda Vebeliunas, and not debtor, was the equitable owner of the trust and its property. We also hold that neither Vanda Vebeliunas nor her trust is equitably estopped from asserting ownership over Lattingtown Estate because Vanda Vebeliunas played no role in debtor's fraud, having had no prior knowledge of his unlawful activities. Moreover, Chase Manhattan Bank and Citibank, N.A. did not rely upon Vanda Vebeliunas' conduct in deciding to extend the loans to debtor.
 
 BACKGROUND[1]
 
 3
 On June 12, 1977, debtor created North Shore Partnership ("NSP") and installed his wife, Vanda Vebeliunas, and other family members and business associates as partners. One month later, Litas Investing Company, Inc. ("Litas") acquired Lattingtown Estate, a parcel of property on Long Island's North Shore comprised of approximately sixty-five acres. Shortly thereafter, debtor, an insider at Litas, and his family began residing at Lattingtown Estate.
 
 
 4
 Litas and NSP entered into an agreement on July 15, 1977 that provided that NSP would subdivide and develop Lattingtown Estate into lots for sale. Litas retained title to the property during the development phase, but upon satisfaction of the terms of the arrangement, it would release specific lots to either NSP or the ultimate buyer. NSP and Litas created several lots, including a five-acre lot adjoining Lattingtown Estate ("Lot 384"), after which Lattingtown Estate consisted of approximately seventeen acres of land with a main house, a cottage, a swimming pool, a pool house, a tennis court, and a garage. On March 4, 1983, debtor created the "Vart Trust, a revocable, living trust" ("Revocable Vart Trust").[2] Almost two years later, on February 16, 1985, Vanda Vebeliunas created the "Vart Trust, an irrevocable trust" ("Irrevocable Vart Trust"). Vanda Vebeliunas was the sole trustee of the Irrevocable Vart Trust and under its terms, debtor was a beneficiary who was "eligible to 20% of all of the distributions from the Corpus of the Trust." Litas subsequently conveyed Lattingtown Estate to the Irrevocable Vart Trust in exchange for Vanda Vebeliunas' inheritance, which she contended had appreciated through investment. The bankruptcy court found that the trustee could not establish by a preponderance of the evidence that the consideration Vanda Vebeliunas paid for Lattingtown Estate was inadequate.
 
 
 5
 In January of 1987, debtor, in critical need of funds due to the collapse of the real estate market, applied to Chase Manhattan Bank ("Chase") for a loan of $2,000,000 and pledged Lattingtown Estate as collateral. Although debtor represented on the loan application that the Revocable Vart Trust, over which he had complete control, owned Lattingtown Estate, Chase subsequently learned that the property was owned by the Irrevocable Vart Trust. Chase agreed to loan debtor $1,000,000, provided that debtor himself hold the title to Lattingtown Estate. Accordingly, debtor executed a fraudulent deed from "VART TRUST BY: Vytautas Vebeliunas" to himself seeking to satisfy the bank's condition. Debtor also executed a mortgage to Chase in which he falsely affirmed that: (1) he lawfully owned Lattingtown Estate; (2) he had the right to mortgage the property; and (3) there were no outstanding claims against the property. Finally, debtor executed and delivered an "Owner's Estoppel Certificate" falsely stating that the mortgage was valid, as well as a "Mortgage Affidavit" falsely stating that he knew of no reason that his title to Lattingtown Estate could be disputed. Upon receipt of these and other documents, Chase gave debtor a check for $1,000,000.
 
 
 6
 Debtor also obtained a loan from Citibank, N.A. ("Citibank") using Lattingtown Estate as collateral. After Citibank agreed during the summer of 1987 to loan debtor $700,000, Citibank's title insurer requested that debtor provide a copy of the trust that held the title to Lattingtown Estate. Although debtor provided a copy of the Revocable Vart Trust agreement, the insurer discovered that the deed from Litas was to the Irrevocable Vart Trust. When confronted with this discrepancy, debtor falsely represented in an affidavit that the deed from Litas was in error, as it should have contained the word "revocable" instead of "irrevocable." The insurer accepted debtor's explanation, and Citibank gave him a check for $700,000 on September 1, 1987.
 
 
 7
 Debtor was eventually indicted in an unrelated matter for bank fraud, misapplication of credit union funds, criminal conflicts of interest, filing false loan applications, and related charges. In 1992, debtor signed an appearance bond for the United States District Court for the Eastern District of New York in the amount of $2,000,000 and pledged Lattingtown Estate as security. One year later, debtor signed an affidavit of confession of judgment in favor of the United States in which he agreed to forfeit Lattingtown Estate if he did not appear for his criminal trial.
 
 
 8
 Debtor defaulted on the loans in 1994, and the Irrevocable Vart Trust purchased Lot 384 from NSP in 1997. Debtor filed a Chapter 11 bankruptcy petition on May 21, 1998 in the United States Bankruptcy Court for the Eastern District of New York. That case was transferred to the Southern District of New York and converted to a Chapter 7 bankruptcy case. Roy Babitt, the trustee, sought to have debtor declared the alter ego of the Irrevocable Vart Trust and to have the trust's assets, in particular Lattingtown Estate and Lot 384, treated as part of debtor's bankruptcy estate. The trustee based his argument upon allegations that debtor exercised control over the trust and Lattingtown Estate.
 
 
 9
 The bankruptcy court held that the alter ego theory of "piercing the corporate veil" does not apply to trusts, because a trust does not have an existence separate and apart from that of its trustee and cannot act on its own behalf. The bankruptcy court also held that the Irrevocable Vart Trust should not be equitably estopped from asserting ownership over Lattingtown Estate, because Vanda Vebeliunas had no knowledge of her husband's fraud until the banks instituted foreclosure proceedings.
 
 
 10
 The district court, acting in its capacity as an appellate court in a bankruptcy case, affirmed in part and reversed in part. The district court held that the alter ego theory may apply to the Irrevocable Vart Trust as a matter of law. The district court then held that the appellees had satisfied the two-part test outlined in Morris v. New York State Department of Taxation & Finance, 82 N.Y.2d 135, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993), which provides that the veil of a corporation may be pierced upon a showing that: (1) the owner exercised complete domination of the corporation with respect to the transaction at issue; and (2) the owner used this domination to commit a fraud or wrong against the plaintiff which resulted in injury to the plaintiff. Id. at 141, 603 N.Y.S.2d 807, 623 N.E.2d 1157.
 
 
 11
 The district court concluded that debtor was the alter ego of the Irrevocable Vart Trust and exercised "complete domination" over the trust with respect to the transactions with Chase and Citibank based upon the bankruptcy court's findings that: (1) debtor and his family received and retained rent proceeds from Lattingtown Estate; (2) debtor and his family lived at Lattingtown Estate without paying rent to the trust; (3) debtor purportedly conveyed Lattingtown Estate to himself and then back to the unspecified "Vart Trust;" (4) debtor granted easements to Lattingtown Estate; (5) debtor and his wife deducted from their personal tax returns real estate taxes and interest expenses relating to Lattingtown Estate; (6) debtor granted mortgages on Lattingtown Estate; (7) debtor pledged Lattingtown Estate in order to obtain bail in his criminal case; and (8) debtor represented to Chase and Citibank that the Revocable Vart Trust, over which he had complete control, owned Lattingtown Estate. The district court also concluded that debtor used the Irrevocable Vart Trust to "obscure continuously the fact that the [trust] was the true owner of Lattingtown Estate." Accordingly, the district court held that Lattingtown Estate was properly part of debtor's bankruptcy estate. However, the district court affirmed the bankruptcy court's judgment to exclude Lot 384 from the bankruptcy estate, and the disposition of that property is not on appeal. Vanda Vebeliunas now appeals the district court's ruling that Lattingtown Estate be treated as part of debtor's bankruptcy estate.
 
 STANDARD OF REVIEW
 
 12
 Although the district court acted in its capacity as an appellate court in a bankruptcy case, we must review the bankruptcy court's findings of fact and conclusions of law independently. Licensing by Paolo, Inc. v. Sinatra, 126 F.3d 380, 390 (2d Cir.1997). We review the bankruptcy court's findings of fact only for clear error and exercise de novo review over its conclusions of law. Id. Mixed questions of fact and law are subject to de novo review. FDIC v. Providence Coll., 115 F.3d 136, 140 (2d Cir.1997) (citing Travellers Int'l A.G. v. Trans World Airlines, 41 F.3d 1570, 1575 (2d Cir.1994)).
 
 DISCUSSION
 I. Alter Ego Theory of Piercing
 
 13
 The question whether the "alter ego theory" of piercing applies to trusts is a matter of state law. See St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 700 (2d Cir.1989).[3] The New York Court of Appeals has never resolved whether courts may "disregard the form of a trust, when the trust was not formed for an illegal purpose and there is the requisite separation between beneficiary and trustee." National Union Fire Ins. Co. of Pittsburgh, Pa. v. Eagle Equip. Trust, 221 A.D.2d 212, 633 N.Y.S.2d 308, 308-09 (1st Dep't 1995). In the absence of controlling authority, this Court must attempt to determine how the New York Court of Appeals would resolve this issue. See In re Joint E. & S. Dist. Asbestos Litig., 721 F.Supp. 433, 434 (E.D.N.Y. & S.D.N.Y. 1988).
 
 
 14
 The appellees identify cases in which New York State courts have preserved the right to pierce trusts. However, those cases are distinguishable, as all involved allegations that the respective parties used trusts to conceal assets or engaged in fraudulent conveyances to shield funds from adverse judgments. For example, in Posner v. S. Paul Posner 1976 Irrevocable Family Trust, 260 A.D.2d 268, 688 N.Y.S.2d 548 (1st Dep't 1999), a plaintiff sought to enforce a confession of judgment against a trust, and an intervenor filed a counterclaim for a declaration that the plaintiff was merely the alter ego of the trust, which the lower court dismissed. The appellate court reinstated the counterclaim, as the intervenor had alleged that the plaintiff was merely attempting to transfer funds from the trust in an effort to render it judgment-proof in connection with the intervenor's independent action against the trust to enforce the terms of a promissory note. Id. at 549. Similarly, in Goldberg v. Goldberg, 172 A.D.2d 316, 568 N.Y.S.2d 394 (1st Dep't 1991), the appellate court affirmed a lower court's decision to pierce various trusts that the defendant used to convert and conceal marital assets. Pappas v. Freund, 172 Misc.2d 466, 660 N.Y.S.2d 302 (Sup.Ct.1997) also involved allegations that a debtor used fraudulent conveyances to conceal his own assets in a trust.
 
 
 15
 By contrast, there are no allegations in the instant case that the Irrevocable Vart Trust was used to conceal assets from creditors. Nor is there any evidence that Vanda Vebeliunas' purchase of Lattingtown Estate or transfer of the property to the Irrevocable Vart Trust was part of a fraudulent conveyance. The bankruptcy court found insufficient evidence to establish that the consideration Vanda Vebeliunas paid for Lattingtown Estate was inadequate or that debtor actually provided the consideration for his wife's purchase of the property. Accordingly, the appellees cannot rely upon the cases they cite, as piercing the Irrevocable Vart Trust under these circumstances would extend state law beyond the parameters established by New York's own courts.[4] As our resolution of this appeal does not require that we conclusively resolve this issue, however, we do not decide whether a trust may be pierced in the instant case as a matter of law in New York.
 
 II. Equitable Ownership
 
 16
 The appellees also argue that the veil of the Irrevocable Vart Trust should be pierced because debtor is the equitable owner of that trust, and, consequently, Lattingtown Estate. Assuming that New York courts would allow the veil of a trust to be pierced in situations where complete domination of a trust has been shown, we nonetheless conclude that no such showing has been made in this case. To pierce the corporate veil under New York law, a plaintiff must prove that: (1) the owner exercised such control that the corporation has become a mere instrumentality of the owner, who is the real actor; (2) the owner used this control to commit a fraud or "other wrong"; and (3) the fraud or wrong results in an unjust loss or injury to the plaintiff. See Freeman v. Complex Computing Co., Inc., 119 F.3d 1044, 1052 (2d Cir.1997) (citations omitted). See also Morris, 603 N.Y.S.2d at 810-11, 623 N.E.2d 1157. Courts have recognized that the element of control may be predicated upon the concept of equitable ownership. See Freeman, 119 F.3d at 1051-53. Pursuant to this approach, an individual who "exercise[s] considerable authority over [the corporation] ... to the point of completely disregarding the corporate form and acting as though [its] assets [are] his alone to manage and distribute" may be deemed the equitable owner of the corporation and its assets, notwithstanding the fact that the individual is not a shareholder and does not occupy a formal position of authority. Id. at 1051 (citation omitted).
 
 
 17
 In the instant case, the bankruptcy court's findings of fact establish that debtor was neither the equitable owner nor in control of the Irrevocable Vart Trust and its property. Rather, Vanda Vebeliunas was the equitable owner of both the trust and Lattingtown Estate. Vanda Vebeliunas purchased Lattingtown Estate with her own assets, viz., her ownership interest in NSP and $200,000, which she earned by investing her inheritance. The bankruptcy court found that the record did not establish that this consideration was inadequate, and the appellees proffer no evidence that debtor, rather than his wife, furnished the consideration. Moreover, Vanda Vebeliunas placed Lattingtown Estate in the Irrevocable Vart Trust.
 
 
 18
 The appellees argue that debtor's equitable ownership and control of the Irrevocable Vart Trust are evidenced by the fact that he personally benefitted from Lattingtown Estate. In particular, the bankruptcy court found that: (1) while Vanda Vebeliunas was the trustee of the Irrevocable Vart Trust, she and debtor received and kept rents from Lattingtown Estate; (2) debtor lived at Lattingtown Estate with his wife and family without paying rent to the Irrevocable Vart Trust; and (3) debtor and his wife took deductions on their personal income tax returns for real estate taxes and interest relating to Lattingtown Estate.
 
 
 19
 These facts, however, do not establish that debtor was the equitable owner of the Irrevocable Vart Trust and Lattingtown Estate because none of these benefits flowed solely to debtor. Rather, all of the benefits debtor enjoyed from Lattingtown Estate flowed jointly to him and his wife, which is consistent with Vanda Vebeliunas' equitable ownership of the property. For example, debtor did not exclusively retain rents from Lattingtown Estate, as the bankruptcy court found that debtor and his wife jointly retained the rent proceeds. Under these circumstances, debtor's receipt and use of the rent proceeds does not evidence control over the property, as spouses routinely share certain financial assets, such as streams of income. Similarly, the mere fact that debtor lived at Lattingtown Estate, along with his wife and family, without paying rent does not divest Vanda Vebeliunas or the Irrevocable Vart Trust of ownership of the property, because a homeowner would be expected to allow her spouse and children to live rent-free in her home. Finally, while debtor enjoyed certain tax advantages from Lattingtown Estate, he did so only in the context of filing joint tax returns with his wife. However, New York is not a community property state, and the mere fact that debtor and his wife filed joint tax returns does not indicate that ownership of Lattingtown Estate transferred to debtor. See Callaway v. Commissioner of Internal Revenue, 231 F.3d 106, 112, 117 (2d Cir.2000). In sum, none of the benefits debtor received from Lattingtown Estate evidence control of the trust or a transfer in ownership of Lattingtown Estate to debtor, because they were consistent with those benefits that would naturally flow to the spouse of the property's equitable owner, Vanda Vebeliunas.
 
 
 20
 The appellees also rely upon the fact that debtor pledged Lattingtown Estate in connection with bail proceedings in his criminal case. However, debtor and his wife did not represent in connection with debtor's appearance bond that he owned Lattingtown Estate. Rather, debtor "pledge[d] home and property" in Florida and New York, and Vanda Vebeliunas signed the bond as a surety. Similarly, debtor represented in his affidavit of confession of judgment only that the terms of his bail provided that Lattingtown Estate would be forfeited if the court found that he did not comply with the requisite conditions. The mere fact that Vanda Vebeliunas pledged Lattingtown Estate as security for her husband's bond does not evidence that debtor controlled the Irrevocable Vart Trust or was the equitable owner of the property.[5]
 
 
 21
 The appellees further argue that debtor exercised control over the trust and its property because he negotiated and executed a series of easements to Lattingtown Estate and paid virtually all of the expenses associated with the Irrevocable Vart Trust. These acts do not evidence a transfer in ownership because spouses routinely administer each other's assets and conduct business on behalf of each other. For example, the appellees rely upon the fact that debtor himself resolved the problem that was created when Lattingtown Estate was subdivided such that a portion of its tennis court became part of a neighbor's property. Debtor granted the neighbor an easement to Lattingtown Estate's lake in exchange for a lease and an option to purchase the land containing the other portion of the tennis court. While debtor himself handled this transaction, the appellees conceded at oral argument that he did so at his wife's request. The mere fact that debtor acted as an agent for his wife does not divest her of her equitable ownership of Lattingtown Estate. As debtor was neither the equitable owner nor in control of the Irrevocable Vart Trust, the appellees cannot pierce the trust.
 
 III. Equitable Estoppel
 
 22
 The facts in this case establish that while the Irrevocable Vart Trust is the record owner of Lattingtown Estate, Vanda Vebeliunas is the equitable owner of the property, and Chase and Citibank cannot equitably estop either from asserting claims of ownership.[6] "Equitable estoppel is grounded on notions of fair dealing and good conscience and is designed to aid the law in the administration of justice where injustice would otherwise result." In re Ionosphere Clubs, Inc., 85 F.3d 992, 999 (2d Cir.1996). "The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 725 (2d Cir.2001). Under New York law, the elements of equitable estoppel are with respect to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts. International Minerals & Res., S.A. v. Pappas, 96 F.3d 586, 594 (2d Cir.1996) (citations omitted). The parties asserting estoppel must show with respect to themselves: (1) lack of knowledge and of the means of knowledge of the true facts; (2) reliance upon the conduct of the party to be estopped; and (3) prejudicial changes in their positions. Id. (citations omitted). See also 12 AM. JUR. 2D Bills & Notes § 554 (1997).
 
 
 23
 In the instant case, neither Chase nor Citibank can establish that Vanda Vebeliunas' conduct or knowledge should estop her or the Irrevocable Vart Trust from asserting ownership over Lattingtown Estate. The banks identify no fraudulent conduct on the part of Vanda Vebeliunas, as she played no role in the fraud and made no representations to the banks concerning debtor's ownership of Lattingtown Estate. Nor is there any evidence that Vanda Vebeliunas affirmatively concealed any facts that influenced the banks to loan her husband $1.7 million. Moreover, Vanda Vebeliunas' silence cannot give rise to equitable estoppel because she had no duty or opportunity to speak. See Kosakow, 274 F.3d at 725 (holding that silence may constitute an affirmative act for purposes of equitable estoppel where there was a duty to speak). The bankruptcy court specifically found that Vanda Vebeliunas had no knowledge of her husband's activities until after he had perpetrated the fraud, and the appellees proffer no evidence that this finding is clearly erroneous.
 
 
 24
 While the banks had title insurance, we are hesitant to say that they exercised due diligence in this case, as both Chase and Citibank knew when they extended the loans that neither debtor nor the Revocable Vart Trust, of which debtor was the trustee, owned Lattingtown Estate. Chase knew that the Irrevocable Vart Trust owned the property and accepted a deed conveying the property from an unspecified "Vart Trust" to debtor. Citibank also knew that debtor was not the record owner of the property, but accepted his representations that the Revocable Vart Trust owned the property, despite a statement to the contrary on the property's deed. Regardless, whether the title insurers acted reasonably is not an issue that is before us.
 
 
 25
 More important, however, the banks did not rely upon Vanda Vebeliunas' conduct in deciding to extend the loans at issue to her husband. Debtor sought the loans from Chase and Citibank without the assistance of his wife. Upon learning that debtor did not own Lattingtown Estate prior to extending the loans, neither bank contacted Vanda Vebeliunas or required that she sign the respective mortgage instruments. Rather, Chase extended the loan upon receiving from debtor a fraudulent deed, as well as a mortgage, an "Owner's Estoppel Certificate," and a "Mortgage Affidavit" that misrepresented his right to mortgage the property. Citibank extended the loan after debtor represented that the Revocable Vart Trust owned Lattingtown Estate and submitted an affidavit stating that the notation on the property's deed to the contrary was erroneous. As the banks extended the loans to debtor based solely upon his misrepresentations and not due to any conduct on the part of Vanda Vebeliunas, the banks cannot estop her or the Irrevocable Vart Trust from asserting ownership of Lattingtown Estate.
 
 CONCLUSION
 
 26
 Based upon the foregoing, the judgment of the United States District Court for the Southern District of New York is REVERSED. The parties are to bear their own costs.
 
 
 
 Notes:
 
 
 [1]
 The bankruptcy court made the following findings of fact
 
 
 [2]
 The district court erroneously found that debtor created this trust on March 4, 1987
 
 
 [3]
 Under the alter ego theory of piercing, the element of control is established by factors indicating that the corporation is the mere alter ego of another corporation or an individual, such as: "(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own."Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 139 (2d Cir.1991).
 
 
 [4]
 The federal tax cases the appellees cite do not justify piercing in this context, as they also involve allegations that the trusts at issue were used to conceal or to shield assets owned by the taxpayerSee, e.g., United States v. Letscher, 83 F.Supp.2d 367, 373-74 (S.D.N.Y.1999).
 
 
 [5]
 The bankruptcy court found that debtor pledged Lattingtown Estate "as if it were his own" on his appearance bond and declared the property "to be a personal asset" on his affidavit of confession of judgment. These findings of fact are clearly erroneous, as debtor never represented on either document that he owned Lattingtown Estate, and he pledged the property only in connection with his wife acting as a surety
 
 
 [6]
 The appellees proffer no evidence to establish that the bankruptcy court's findings of fact are clearly erroneous