399 F.Supp.2d 486 (2005)
In re ADLER, COLEMAN CLEARING CORP., Debtor.
Edwin B. Mishkin, as Sipa Trustee for The Liquidation of the Business of Adler, Coleman Clearing Corp. Plaintiff,
v.
Philip Gurian, Tally Group, S.A., Rocena Company, Ltd., Ubiquity Holdings, Ltd., a/k/a Umbiquity Holdings, S.A., Maraval and Associates; Caspian Consulting, Ltd., and Bauman Ltd., Defendants.
No. 97 Civ. 3817(VM).
United States District Court, S.D. New York.
November 8, 2005.
*487 *488 James J. Binns, James J. Binns, P.C., Philadelphia, PA, Marc S. Gottlieb, Beckman, Millman & Sanders, LLP., New York, NY, William J. Schwartz, Kronish, Lieb, Weiner & Hellman LLP, New York, NY, for Philip Gurian.
Thomas J. Moloney, Cleary, Gottlieb, Steen & Hamilton, New York, NY, for Edwin B. Mishkin.

DECISION AND ORDER
MARRERO, District Judge.

I. BACKGROUND

Plaintiff Edwin B. Mishkin brought this action as Trustee under the Securities Investor Protection Act of 1970 ("SIPA"), 15 U.S.C. § 78a et seq., for the liquidation of the business of Adler, Coleman Clearing Corp. ("Adler"). In prior related proceedings arising out of Adler's bankruptcy and liquidation, the Court extensively detailed relevant events, factual findings and legal conclusions that serve as background for the wrongful activities that gave rise to the Trustee's motion in the case at hand.[1] Familiarity with the pertinent facts is assumed.
In this proceeding the Trustee moves for summary judgment against defendant Philip Gurian ("Gurian") on the Trustee's claim that Gurian, as a person controlling the six remaining named defendants herein (the "Bahamanian Companies"), may be held liable under the common law alter ego doctrine and Section 20(a) ("Section 20(a)") of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78t(a), for payment of judgments the Trustee obtained against the Bahamian Companies. The Trustee contends that the Bahamanian Companies were shell entities Gurian created and controlled as tools with which to commit the securities fraud that ultimately caused Adler's financial collapse.
In other related proceedings, Gurian and several co-defendants were charged with numerous acts of racketeering, securities fraud, extortion, money laundering conspiracy and witness tampering, in an indictment arising out of frauds that injured Adler and other securities firms and investors. Gurian pled guilty pursuant to a plea agreement to two counts of that indictment. By his plea, Gurian admitted to the crimes of mail fraud and conspiracy to commit mail fraud, wire fraud and securities fraud. The Trustee contends that through Gurian's plea allocution to these charges and other sworn statements he has made in the course of various legal proceedings arising out of Adler's demise, *489 including the instant action, Gurian has admitted facts and conduct sufficient to support a finding, for the purposes of liability under the common law alter ego doctrine and Section 20(a), that Gurian controlled the Bahamian Companies. The Court concurs. For the reasons discussed below, the Trustee's motion for summary judgment is granted.

II. FACTS

Adler was forced by government regulators to close down its clearing house business in 1995 following the insolvency and demise of Hanover Sterling & Company, Ltd. ("Hanover"), a securities firm that served as one of Adler's introducing brokers. See Jackson, 263 B.R. at 417. Hanover collapsed as a result of an extensive scheme that operated to target for short selling and thus to lower the market prices of certain house stocks that Hanover had introduced into public markets. In the case at hand, the Trustee alleges that this scheme was perpetrated by Gurian through the device of the six Bahamian Companies, along with a seventh, Roddy DiPrimo, S.A. ("DiPrimo"),[2] against which the Trustee, in Adler's Bankruptcy Court proceeding, obtained a final judgment by default in an amount of $150 million on a claim of racketeering and $50 million for securities fraud. See Judgment (the "Di-Primo Judgment"), attached as Ex. A to Affidavit of James G. Corsiglia in Support of the Trustee's Motion for Summary Judgment, dated October 18, 2005 ("Corsiglia Aff."). In that bankruptcy proceeding, the Trustee also obtained a separate default judgment against the Bahamian Companies for liability to the same extent as DiPrimo. See Default Judgment ("the Bahamian Companies Judgment") attached as Ex. B to Corsiglia Aff.
In support of his allegation that Gurian sufficiently controlled the Bahamian Companies, the Trustee has introduced, and the Court has considered, among numerous other documents: (1) the Indictment in the case charging Gurian and other individuals with various crimes arising out of Hanover's demise (see Indictment (the "Indictment"), United States v. Gurian ("U.S.v.Gurian"), No. 99-215-CR-23(A) (M.D.Fla.1999), attached as Ex. D to Corsiglia Aff.); (2) the plea agreement pursuant to which Gurian pled guilty to Counts Two and Three of the Indictment, counts which charged mail and wire frauds and conspiracy to commit securities frauds (see In Camera Plea Agreement (the "Plea Agreement"), attached as Ex. E to Corsiglia Aff.); (3) the transcript of Gurian's guilty plea in U.S. v. Gurian (see Transcript of Guilty Plea Before Honorable Mark Pizzo, United States Magistrate Judge (the "Guilty Plea"), attached as Ex. F to Corsiglia Aff.); (4) a motion Gurian made requesting release of certain interests Gurian possessed in accounts in the name of the Bahamian Entities and other companies (see Motion to Release Assets (the "Assets Release"), attached as Ex. G. to Corsiglia Aff.); and (5) Gurian's deposition taken in connection with this action (see Transcript of the Deposition of Philip Gurian on April 21, 2005 ("Gurian Dep."), attached as Ex. Ito Corsiglia Aff.).
To counter the Trustee's motion, Gurian has submitted three affidavits. The first one is his own. In it he asserts that he is a minority owner of the Bahamian Entities along with at least two other persons; that he does not dominate or control the Bahamian Entities; that the other owners act of their own free will and have interests that do not coincide with his own nor are dominated or controlled *490 or coerced by Gurian. (See Affidavit of Philip Gurian, dated October 6, 2005 ("Gurian Aff."), attached to Memorandum of Law in Response to Plaintiff's Motion for Summary Judgment, dated October 7, 2005 ("Def.'s Mem."), at 1-2.) The other affidavits are from two other individuals, Glen T. Vittor ("Vittor") and Jaime Villaroel ("Villaroel"). Vittor, a co-defendant and co-conspirator in U.S. v. Gurian, attests that he is an owner of the Bahamian Entities, and that Gurian was not a majority owner and did not dominate, control or coerce the Bahamian Entities or their other owners. (See Affidavit of Glen T. Vittor, dated October 7, 2005, attached to Def.'s Mem.) Villaroel similarly declares that he is an owner of the Bahamian Entities; that he and Vittor combined had voting power substantially larger than that of Gurian; that neither he nor the Bahamian Entities were dominated or controlled by Gurian; and that he, Vittor and Gurian were separate individuals with separate interests who decided matters regarding the Bahamian Entities in accordance with each owner's respective personal interests. (See Affidavit of Jaime Villaroel, dated July 10, 2005, attached to Def.'s Mem.)

III. STANDARD OF REVIEW

In order to prevail on a motion for summary judgment, the moving party must demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A motion for summary judgment should be granted unless the evidence adduced by the non-moving party is "sufficient . . . for a jury to return a verdict for that party." Id. at 249, 106 S.Ct. 2505.
In determining whether genuine issues of material fact exist, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255, 106 S.Ct. 2505 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Once the moving party has made a showing that no genuine issue of material fact remains to be tried, the burden shifts. In the face of a properly supported motion for summary judgment, the opposing party cannot not "get to a jury without `any significant probative evidence tending to support' [the existence of a disputed fact]." Anderson, 477 U.S. at 249, 106 S.Ct. 2505 (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The nonmovant, however, cannot create a genuine issue of fact and defeat summary judgment through "[c]onclusory allegations, conjecture, and speculation." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir.1998). As the Second Circuit has recognized: "[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs., Ltd., 22 F.3d 1219, 1223-24 (2d Cir.1994) (citations omitted).

IV. DISCUSSION

A. CHOICE OF LAW
As a threshold matter, Gurian calls into question the appropriate law that applies to this action. He contends that whether the corporate veil of the Bahamian *491 Companies may be pierced in this proceeding should be governed by the law of the Bahamas, although he does not state what that law provides or whether if applied here it would yield a materially different result. Nonetheless, the Court finds that New York law applies to the issues presented by the Trustee's motion. As the forum state, New York's choice of law principles would determine the applicable law, and under those rules New York law would govern the resolution of the dispute where, as here, New York has the greatest interest in the litigation. See Kalb, Voorhis & Co. v. American Fin. Corp., 8 F.3d 130, 132 (2d Cir.1993) (quoting Intercontinental Planning, Ltd. v. Daystrom, Inc., 24 N.Y.2d 372, 300 N.Y.S.2d 817, 248 N.E.2d 576, 582 (1969)). Adler and Hanover both were securities firms that operated in New York. The fraudulent trading that ultimately led to their collapse was conducted by brokers in the firms' offices in New York, and constituted violations of New York law. See Jackson, 263 B.R. at 485-86. And it is likely that a substantial number of the investors who were harmed by the wrongdoing were residents, businesses or other persons with significant contacts with New York.
B. ALTER EGO DOCTRINE
The elements of the alter ego theory of liability, a doctrine designed to prevent corporate fraud, were articulated by the Second Circuit in Babitt v. Vebeliunas (In re Vebeliunas), 332 F.3d 85, 91-92 (2d Cir.2003). To warrant piercing the corporate veil under New York law and thereby imposing liability on a person who effectively dominates or controls the vital affairs of a corporate entity, a plaintiff must establish that: "(1) the owner exercised such control that the corporation has become a mere instrumentality of the owner, who is the real actor; (2) the owner used this control to commit a fraud or `other wrong'; and (3) the fraud or wrong results in an unjust loss or injury to the plaintiff." Id. at 91-92 (citing Freeman v. Complex Computing Co., 119 F.3d 1044, 1052 (2d Cir.1997) (quotation in original) and Morris v. New York Dep't of Taxation & Fin., 623 N.E.2d 1157, 1060 (1993)). The Second Circuit also enunciated a number of criteria the courts may weigh in evaluating the element of control. Among the considerations relevant to this action are: "[1] the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, . . . [2] whether funds are put in and taken out of the corporation for personal rather than corporate purposes, . . . [3] overlap in ownership, officers, directors, and personnel, . . . [4] common office space, address and telephone numbers of corporate entities, . . . [5] the amount of business discretion displayed by the allegedly dominated corporation, . . . and . . . [6] whether the corporation in question had property that was used by other of the corporations as if it were its own.'" Id. at 90 n. 3 (quoting Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc., 933 F.2d 131, 139 (2d Cir.1991)).
A reading of the Indictment, the Plea Agreement, the Guilty Plea, the Gurian Deposition and various other documents on the record before it on the instant motion persuades the Court that the Trustee has sufficiently demonstrated circumstances satisfying the Babitt standards to establish Gurian's exercise of domination and control over the Bahamian Entities. (See Memorandum of Law in Support of Trustee's Motion for Summary Judgment, dated September 26, 2005 ("Trustee's Mem."), at 14, 16-19).
With respect to the first element, the Court finds that in various documents the Trustee has presented Gurian admits that:

*492  he is an owner of the Bahamian Entities;
 he caused most of the companies to be incorporated and to open securities accounts through which he directed trading independent of the corporations;
 he used certain offshore accounts he controlled for personal reasons to conceal his ownership of securities he traded, and moved funds in and out of the accounts at his discretion;
 other than the owners, there were no officers, employees or payroll for the companies, nor evidence of observance of corporate formalities;
 there were no places of corporate operations, addresses or telephone numbers for the Bahamian Entities, other than those of Gurian's attorneys' offices, which they all used in common.
See, e.g., Gurian Dep. at 51-54 (admitting that Gurian used the Bahamian Entities to open securities accounts and that trading from those accounts was directed by Gurian or Vittor); id. at 105 (admitting that Gurian caused certain trading accounts of one of the Bahamian Entities to be established with a Canadian securities company); id. at 63-69 (admitting that Gurian initially organized the Bahamian entities with Post Office Box addresses corresponding to the addresses of Gurian's Bahamian attorneys who incorporated them, and not able to say definitively whether the companies had employees or directors or what functions they performed); id. at 101 (stating that the companies had no payroll and unable to say whether there were any employment or tax payment records with respect to any of the companies' employees); Assets Release at ¶ 2 (acknowledging Gurian's ownership of securities and/or cash equivalent interests for accounts in the names of the Bahamian Entities and other companies); Plea Agreement at 17; Guilty Plea at 36 (admitting that Gurian caused shares of securities to be issued to offshore accounts that Gurian controlled); Trustee's Statement of Undisputed Facts Pursuant to Local Rule 56.1, dated September 26, 2005, at 3 (stating that the address Gurian used to receive his account statements and mail and to transact business relating to the Bahamian Entities' securities trading was the same as the offices of the Bahamas attorneys whose Post Office Box address the companies used).
The second element, use of corporate control to commit wrongdoing, is satisfied by Gurian's plea allocution. In pleading guilty to the charges in Counts Two and Three of the Indictment, Gurian admitted to having organized the Bahamian Entities "for the benefit of the defendants in order to disguise and conceal the true owners and participants in various stock transactions as well as to defraud the investing public. . . ." Guilty Plea at 36; see also Gurian Dep. at 83 (conceding that "[s]ome of the things that I pled guilty to involved these Bahamian companies").
The third Babbitt factor is satisfied by the DiPrimo Judgment and the Bahamian Companies Judgment. Those documents establish that the Bahamian Entities committed violations of the Exchange Act and common law fraud and deceit entitling the Trustee to recover damages on behalf of Adler. See also Gurian Dep. at 82 (admitting that "these illegal activities started with these Bahamian Companies").
To respond to the substantial evidence the Trustee has presented and thus endeavor to raise an issue of disputed fact, Gurian denies in his affidavit, supported by that of Vittor,[3] that he dominated or controlled *493 the Bahamian Entities. Neither he nor Vittor presents any corporate records of the Bahamian Entities, or any other reliable documentation establishing the extent of their respective ownership of the Bahamian Entities. Nor do they offer any other evidence to refute the Trustee's assertions that those companies had no officers, employees, offices, payroll or any operations, or otherwise to establish that the companies acted independently of Gurian. Nothing Gurian presents, even viewed in the light most favorable to him, is sufficiently specific to qualify as significant probative evidence to warrant a finding that a genuine issue of material fact exists, let alone that a reasonable jury could return a verdict for Gurian. See Anderson, 477 U.S. at 249, 106 S.Ct. 2505; Gallo, 22 F.3d at 1223-24.
Moreover, the statements in Gurian's entirely conclusory affidavit are thoroughly contradicted by admissions he made under oath in the Plea Agreement, Guilty Plea, Deposition and at the trial of Hanover's brokers. See Cleveland, 526 U.S. at 806, 119 S.Ct. 1597 (noting that "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own sworn statement [ ]by. . . . affidavit that flatly contradicts that party's earlier sworn deposition[ ]"); Bickerstaff v. Vassar Coll., 196 F.3d 435, 455 (2d Cir.1999) (citing Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir.1996)).
Gurian, though contending that he is only a minority owner of the Bahamian Entities, has produced with his affidavit no corporate records of any kind substantiating that claim, though he had more than ample opportunity to do so in addressing the instant motion. Similarly, other than equally conclusory statements that Gurian was not a majority owner and did not control the Bahamian Entities, Vittor presents no evidence of his assertions or other proof of his ownership. Nor does he specifically address the other evidence adduced by the Trustee tending to establish Gurian's control of the companies.
Regardless, the question of ownership of the Bahamian Entities, whether majority or minority, is not by itself determinative of the issue of alter ego liability. Control of a corporation for the purposes of piercing the corporate veil does not turn solely on ownership of the company's stock. Under New York law, courts may pierce the corporate veil by applying the doctrine of equitable ownership, under which "an individual who exercises sufficient control over the corporation may be deemed an `equitable owner,' notwithstanding the fact that the individual is not a shareholder of the corporation." Freeman, 119 F.3d at 1051 (citing Guilder v. Corinth Constr. Corp., 235 A.D.2d 619, 651 N.Y.S.2d 706, 707 (3d Dep't 1997) and Lally v. Catskill Airways, Inc., 198 A.D.2d 643, 603 N.Y.S.2d 619, 621 (3d Dep't 1993)); see also Babitt, 332 F.3d at 91. *494 Accordingly, the Court concludes that the Trustee is entitled to pierce the Bahamian Companies' corporate veil in this proceeding and hold Gurian liable to Adler for the judgments the Trustee has obtained against those companies.
B. SECTION 20(a) LIABILITY
Section 20(a) of the Exchange Act provides:
Every person who, directly or indirectly, controls any person liable under any provision of [the Exchange Act] or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.
15 U.S.C. § 78t(a) (2005).
In Securities and Exchange Commission v. First Jersey Securities, Inc., 101 F.3d 1450 (2d Cir.1996), the Second Circuit enunciated the elements of a prima facie case of Section 20(a) controlling-person liability. For this purpose, a plaintiff must show "[1] a primary violation by the controlled person . . . [2] control of the primary violator by the targeted defendant . . . and . . . [3] that the controlling person was `in some meaningful sense [a] culpable participant [ ] in the fraud perpetrated by [the] controlled person[ ].'" Id. at 1472 (internal citations omitted). Control over a primary violator may be demonstrated by evidence showing that "the defendant possessed the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'" Id. at 1472-73 (quoting 17 C.F.R. § 240.12b-2) (emphasis added).
On the record before it, the Court finds that the Trustee has sufficiently established the preceding elements in this case. The primary violations by the Bahamian Companies have been shown by means of the judgments entered against them in the Bankruptcy Court. (See Bahamian Companies Judgment.)
The Court further finds that Gurian's control of the Bahamian Companies has been sufficiently demonstrated by the same evidence cited by the Trustee and relied upon by the Court to satisfy the standards for alter ego liability described above. (See, e.g., Plea Agreement at 17; Guilty Plea at 36; Gurian Dep. at 51-54, 63-69.)
Finally, the evidence of Gurian's culpable participation in the fraudulent scheme of which the Bahamian Companies were the primary violators, though as mere instruments of Gurian's unlawful activities, is also amply manifested in Gurian's Guilty Plea, Plea Agreement, Deposition and other sworn testimony cited above. Read together, these documents sufficiently demonstrate Gurian's use of the Bahamian Companies to fraudulently sell short Hanover house stocks and establish the resulting crimes of which he was convicted. It is hard to imagine a clearer example of culpable participation in unlawful transactions than the offender pleading guilty to underlying crimes arising out of those activities.
Gurian argues that the Bahamian Companies' primary violation has not been established because the issue was not litigated in the Bankruptcy Court but determined by default, and that those judgments cannot be given collateral estoppel effect. This contention is unavailing. The Trustee does not seek in this proceeding to establish the primary violations committed by the Bahamian Companies by claiming collateral estoppel effect *495 for the Bahamian Entities' default judgments. Rather, by their terms those judgments constitute sufficient evidence to establish two legal facts: (1) that violations of the securities laws occurred and were committed by the Bahamian Companies and (2) that those companies incurred liability to the Trustee on account of their wrongful activities' impact on Adler. See Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir.1995) ("There is no question that a default judgment establishes liability."). Section 20(a) requires only that the controlled person who serves as the primary violator be liable to the injured party; its plain text contains no express provision specifying or placing any limitation on how that liability may be established. See 15 U.S.C. § 78t(a) (2005). The Court is persuaded that the DiPrimo Judgment and the Bahamian Companies Judgment constitute sufficient evidence for this purpose.
The Court also notes that insofar as the Bahamian Entities' judgments were entered by default and that a principal or owner exercising a sufficient measure of control over the entities could have prevented the default by producing evidence or otherwise responding to the complaints, such a person should not be allowed to escape the consequences of the default. See United States Sec. & Futures Corp. v. Irvine, No. 00 Civ. 2322, 2002 U.S. Dist. LEXIS 26165, at *12 (S.D.N.Y. May 10, 2002). Gurian's contention that the Trustee has failed to demonstrate that Gurian's participation in the fraud committed by the Bahamian Entities rises to a level that may be classified as "meaningful" and that Gurian "was on the periphery of the alleged misdeeds" (Def.'s Mem. at 13), is equally unmeritorious and specious in the light of the overwhelming record to the contrary, the bulk of which is grounded on Gurian's own sworn admissions.
On the evidence before it, the Court therefore concludes that Gurian was a controlling person of the Bahamian Entities for the purposes of Section 20(a) liability.

III. ORDER

For the reasons discussed above, it is hereby
ORDERED that the motion of plaintiff Edwin B. Mishkin, as SIPA Trustee (the "Trustee") for the liquidation of the business of Adler, Coleman Clearing Corp., for summary judgment against defendant Philip Gurian as a controlling person under the doctrine of alter ego liability and Section 20(a) of the Securities and Exchange Act of 1934 is GRANTED; and it is finally
ORDERED that the Trustee advise the Court by November 15, 2005 of the posture of the case and whether any further proceedings in this action are contemplated in the light of this ruling.
SO ORDERED.
NOTES
[1] See Mishkin v. Ageloff (In re Adler, Coleman Clearing Corp.), 299 F.Supp.2d 249 (S.D.N.Y. 2004) (granting the Trustee summary judgment on liability against certain brokers of one of Adler's introducing firms); Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.), 263 B.R. 406 (S.D.N.Y.2001) (affirming the Bankruptcy Court's denial of certain claims in Adler's bankruptcy proceeding).
[2] In the balance of this decision, the seven companies collectively are referred to as the "Bahamian Entities."
[3] As indicated above, Gurian submitted the affidavit of Villaroel also stating that Gurian did not dominate or control the Bahamian Entities. However, in his deposition, Gurian somewhat contradicts or at least casts substantial doubt on some of what Villaroel says in his affidavit. Gurian, for example, states that Villaroel had no role in directing any of the trading for the Bahamian Entities, that that task was handled by either Gurian or Vittor, and that Villaroel "was not very sophisticated in securities, so his input was limited to whatever corporate decisions there were, if there were any." (Gurian Dep. at 51-52.). Moreover, Villaroel's affidavit, like those submitted by Gurian and Vittor, is entirely conclusory and not substantiated by any documentary support. Accordingly, to the extent Gurian's own sworn testimony tends to discredit assertions of his own witness offered to create a factual issue, his contradicting statements diminish the sufficiency of the evidence available upon which a rational jury could return a verdict for Gurian. See Anderson, 477 U.S. at 249, 106 S.Ct. 2505; Gallo, 22 F.3d at 1223-24; cf. Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999).