12-1094-bk(L)
In Re: JOHNS-MANVILLE CORPORATION Common Law Settlement Counsel, et al.
v. The Travelers Indemnity Co., et al.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: January 10, 2013                    Decided: July 22, 2014)

Docket Nos. 12-1094-bk(L), 12-1150-bk(Con), 12-1205-bk(Con)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
IN RE: JOHNS-MANVILLE CORPORATION, MANVILLE CORPORATION, MANVILLE
INTERNATIONAL CORPORATION, MANVILLE EXPORT CORPORATION,
JOHNS-MANVILLE INTERNATIONAL CORPORATION, MANVILLE SALES
CORPORATION, f/k/a JOHNS-MANVILLE SALES CORPORATION, successor by
merger to MANVILLE BUILDINGS MATERIALS CORPORATION, MANVILLE
PRODUCTS CORPORATION and MANVILLE SERVICE CORPORATION, MANVILLE
INTERNATIONAL CANADA, INC., MANVILLE CANADA, INC., MANVILLE
INVESTMENT CORPORATION, MANVILLE PROPERTIES CORPORATION,
ALLAN-DEANE CORPORATION, KEN-CARYL RANCH CORPORATION,
JOHNS-MANVILLE IDAHO, INC., MANVILLE CANADA SERVICE INC., SUNBELT
CONTRACTORS, INC.,

            Debtors.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
COMMON LAW SETTLEMENT COUNSEL, STATUTORY AND HAWAII DIRECT ACTION
SETTLEMENT COUNSEL,

            Movants-Appellants,

ASBESTOS PERSONAL INJURY PLAINTIFFS,

            Interested Parties-Appellants,

                  v.

THE TRAVELERS INDEMNITY COMPANY, TRAVELERS CASUALTY AND SURETY
COMPANY, f/k/a AETNA CASUALTY AND SURETY COMPANY,

            Objectors-Appellees.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
_____

      *The Clerk of the Court is instructed to conform the caption in
accordance herewith.

B e f o r e:   WINTER, POOLER, and CHIN, Circuit Judges.

Appeal from a judgment of the United States District Court for the Southern District of New York (John G. Koeltl, Judge), reversing the bankruptcy court's final judgment (Burton R. Lifland, Judge) that had enforced settlement agreements and compelled appellees to make payments to asbestos plaintiffs under the agreements. We vacate the district court's order and order reinstatement of the final judgment of the bankruptcy court.

PAUL D. CLEMENT (Matthew Gluck & Kent A. Bronson, Milberg LLP, New York, NY, on the brief), Bancroft PLLC, Washington, D.C., for Movant-Appellant Statutory and Hawaii Direct Action Settlement Counsel.

RONALD BARLIANT (Kenneth S. Ulrich & Danielle Wildern Juhle, on the brief), Goldberg Kohn Ltd., Chicago, IL, for Movant-Appellant Common Law Settlement Counsel.

SANDER L. ESSERMAN (Cliff I. Taylor, on the brief), Stutzman, Bromberg, Esserman & Plifka, P.C., Dallas, TX, for Interested Parties-Appellants Asbestos Personal Injury Plaintiffs.

BARRY R. OSTRAGER (Andrew T. Frankel, Jonathan M. Weiss & Bryce A. Pashler, on the brief), Simpson Thacher & Bartlett LLP, New York, NY, for Objectors-Appellees The Travelers Indemnity Company & Travelers Casualty and Surety Company.

WINTER, Circuit Judge:

Common Law Settlement Counsel, Statutory and Hawaii Direct Action Settlement Counsel, and Asbestos Personal Injury

Plaintiffs[1] appeal from Judge Koeltl's reversal of a bankruptcy court's final judgment. Bankruptcy Judge Lifland had required appellees -- The Travelers Indemnity Company and Travelers Casualty and Surety Company (together, "Travelers") -- to pay over $500 million to asbestos plaintiffs based on Travelers' obligations under certain settlement agreements (the "Agreements"). The district court reversed, holding that conditions precedent to payment under the Agreements were never met, and that Travelers' obligation to pay therefore never matured.

Because we conclude that the relevant conditions precedent were satisfied, we vacate the district court's order and remand with instructions to reinstate the bankruptcy court's final judgment. In addition, given that Travelers did not timely raise its arguments regarding the Agreements' conditions that the movants either execute a specific number of releases and deliver them into escrow or dismiss their claims with prejudice, we deem those arguments waived. Finally, we hold that the bankruptcy court correctly applied prejudgment interest to the amount owed and that it correctly calculated the total payment due from the appropriate date.

---

[1] The nature of the various appellants will become clear, to the extent relevant, in the course of this opinion. The Asbestos Personal Injury Plaintiffs are six asbestos personal injury claimants who stand to recover from the Common Law Settlement Trust.

BACKGROUND

For many years, Travelers was the primary insurer for the Johns-Manville Corporation ("Manville"), once the largest supplier of asbestos and asbestos-containing products. In re Johns-Manville Corp. (Manville I), Nos. 82 B 11656, 82 B 11657, 82 B 11660, 82 B 11661, 82 B 11665, 82 B 11673, 82 B 11675, 82 B 11676(BRL), 2004 WL 1876046, at *2-3 ¶¶ 1, 3, *5 ¶ 12 (Bankr. S.D.N.Y. Aug. 17, 2004). In 1982, after asbestos-related health problems triggered litigation, Manville, faced with the prospect of tremendous liability, filed a Chapter 11 petition for bankruptcy protection and reorganization. In re Johns-Manville Corp. (Manville II), 340 B.R. 49, 54 (S.D.N.Y. 2006); Travelers Indem. Co. v. Bailey, 557 U.S. 137, 140 (2009).

With Manville entangled in bankruptcy proceedings, asbestos plaintiffs began to file direct-action[2] suits against Travelers and other insurers based on the insurers' relationships with Manville. Manville II, 340 B.R. at 55. At the same time, Travelers and other insurers were involved in a policy-coverage dispute with Manville, and numerous contribution, indemnity, and cross claims were asserted among Manville's insurers. Id.; Manville I, 2004 WL 1876046, at *14-15 ¶¶ 54, 57.

Consequently, Travelers and the other insurers entered into a settlement agreement with Manville. Pursuant to the

---

[2] A "direct action" is "[a] lawsuit by a person claiming against an insured but suing the insurer directly instead of pursuing compensation indirectly through the insured." Black's Law Dictionary 525 (9th ed. 2009).

4

settlement, Travelers agreed to contribute roughly $80 million to a trust established as part of the bankruptcy estate (the "Manville Trust") in exchange for a complete release of Manville policy-related liabilities. Manville I, 2004 WL 1876046, at *15 ¶¶ 58, 61. The bankruptcy court provided extensive notice regarding the settlement, and it also appointed a Future Claims Representative ("FCR") to represent future asbestos claimants during relevant proceedings. In re Johns-Manville Corp. (Manville IV), 600 F.3d 135, 140-41 (2d Cir. 2010).

The bankruptcy court eventually approved the settlement and entered two orders, the Insurance Settlement Order and the Confirmation Order (together, the "1986 Orders"). Manville I, 2004 WL 1876046, at *15-16 ¶¶ 60-61, 64. The 1986 Orders were "meant to provide the broadest protection possible to facilitate global finality for Travelers as a necessary condition for it to make a significant contribution to the Manville estate." Id. at *31 ¶ 23. The Insurance Settlement Order released Travelers and the other settling insurers from Manville-related obligations, enjoined "all future claims for bad faith or insurer misconduct," and channeled all such claims to the Manville Trust. Id. at *15 ¶ 61. The Confirmation Order confirmed Manville's reorganization plan, incorporating the Insurance Settlement Order by reference and enjoining "all persons from commencing any action against any of the Settling Insurance Companies for the purpose of, *directly or indirectly*, collecting, recovering or receiving payment of, on

5

or with respect to any Claim . . . or Other Asbestos Obligation . . . ." Id. at *16 ¶ 64 (internal citation and quotation marks omitted).

Despite the 1986 Orders, asbestos plaintiffs filed more actions against Travelers in several states. Id. at *17 ¶ 70. The majority of these claims did not allege violations derivative of Manville's actions; instead, they were based on Travelers' own alleged wrongdoing as Manville's insurer. Although it is a misnomer, see infra note 3, we will style these claims as the "Direct Actions." The Direct Actions were brought by three categories of plaintiffs. We will call them the "Statutory Direct Action Plaintiffs," "Hawaii Direct Action Plaintiffs," and "Common Law Direct Action Plaintiffs." They asserted two categories of claims. First, the Statutory Direct Action Plaintiffs and Hawaii Direct Action Plaintiffs alleged, among other things, that Travelers "conspired to violate state laws prohibiting unfair insurance . . . practices" by fraudulently perpetuating a "state of the art" defense, id. at *18-19 ¶¶ 74-79, and allegedly misrepresenting Manville's knowledge of asbestos hazards. Second, the Common Law Direct Action Plaintiffs claimed similarly that Travelers violated common law duties when it failed to disclose what it knew about asbestos

6

hazards from its relationship with Manville. Id. at *19 ¶¶ 80-82.[3]

Relying on the 1986 Orders, in June 2002, Travelers moved before the bankruptcy court to enjoin the Direct Actions. Manville II, 340 B.R. at 55. The bankruptcy court issued a temporary restraining order against prosecution of certain lawsuits against Travelers but also referred the matter to mediation. Id. The mediation, conducted by former New York Governor Mario M. Cuomo, resulted in the three Settlement Agreements between Travelers and the Statutory, Hawaii, and Common Law Direct Action Plaintiffs. In re Johns-Manville Corp. (Manville III), 517 F.3d 52, 58 (2d Cir. 2008); Manville I, 2004 WL 1876046, at *1, *22-23 ¶¶ 96, 101, 105. In all, Travelers agreed to pay up to $360 million to the Statutory Plaintiffs, up to $15 million to the Hawaii Plaintiffs, and up to $70 million to the Common Law Plaintiffs, in three respective funds separate from the Manville Trust. Manville I, 2004 WL 1876046, at *22-23 ¶¶ 96, 101, 105.

Under the Agreements, the Direct Action Plaintiffs were to be paid from the funds, but only after three conditions were satisfied. Id. at *22 ¶¶ 96-100. These conditions, described in detail immediately infra, concerned the breadth of an order to be

---

[3] As noted by the Supreme Court in Travelers Indem. Co. v. Bailey, 557 U.S. 137, 143 n.2 (2009), these suits were not direct actions "in the terms of strict usage," because they sought "to hold Travelers liable for independent wrongdoing rather than for a legal wrong by Manville." Nevertheless, because all courts in the course of this litigation have dubbed these suits "direct actions," we do so here. See In re Johns-Manville Corp. (Manville IV), 600 F.3d 135, 142 (2d Cir. 2010).

7

entered by the bankruptcy court ("Clarifying Order") regarding the interpretation of the 1986 Orders, the finality of the Clarifying Order, and various provisions regarding disposal of the Direct Actions.

First, the Agreements required that the bankruptcy court, once it approved the settlements, enter a "Clarifying Order." The Statutory and Hawaii Direct Action Settlement Agreements required that the Clarifying Order "contain[] prohibitions against Claims at least as broad as those contained in Exhibit A." App. at 231, 269. Similarly, the Common Law Direct Action Agreement required that the Clarifying Order contain language "substantially in the form" of Exhibit A.[4] Id. at 307.

Exhibit A of each Agreement was a proposed Clarifying Order containing provisions barring all claims against Travelers arising out of, or relating to, Travelers' handling of asbestos-related claims, including contribution and indemnity claims. The proposed Clarifying Order also expressly barred the new, nonderivative Direct Actions that were the subject of the settlements. Finally, each Exhibit A conveyed that the proposed Clarifying "Order is an order clarifying the Confirmation Order [of the 1986 Orders]" and that all the barred claims listed

---

[4] Although the language of the Common Law Direct Action Settlement Agreement differs somewhat from that of the Statutory and Hawaii Direct Action Settlement Agreements, we find, as did both the district court and the bankruptcy court, that the distinctions are not meaningful with regard to the issues on appeal. See In re Johns-Manville Corp. (Manville VI), 845 F. Supp. 2d 584, 588 & nn.4&6 (S.D.N.Y. 2012); In re Johns-Manville Corp. (Manville V), 440 B.R. 604, 612 n.12 (Bankr. S.D.N.Y. 2010). We therefore reject the Common Law Settlement Counsel's arguments that rely on supposed differences in the Agreements' language.

8

within the proposed Clarifying Order were "covered by the Confirmation Order and permanently enjoined as against Travelers, which [was] released therefrom under the Confirmation Order." Id. at 245, 283.

Second, the Clarifying Order had to become a "Final Order" under the Agreements' definition, i.e., an order from which no appeal is taken, or an order that has been "affirmed by the highest court to which such order was appealed or certiorari has been denied and the time to take any further appeal or petition for certiorari shall have expired." Id. at 228, 265, 304.

Third, another set of conditions precedent required either the execution and delivery into escrow of at least 49,000 general releases of claims (under the Statutory Direct Action Settlement Agreement), at least 14,000 general releases of claims against Travelers (under the Common Law Direct Action Settlement Agreement), or dismissals with prejudice of all named plaintiffs' pending claims against Travelers (under the Hawaii Direct Action Settlement Agreement).

With the Agreements in place, the parties moved for the bankruptcy court's approval in 2004. Manville I, 2004 WL 1876046, at *1. Various third parties filed objections, including Chubb Indemnity Insurance Company ("Chubb"). Chubb had issued asbestos-related insurance policies -- although it never insured Manville -- and complained that any potential contribution and indemnification claims it might have against Travelers would be unlawfully barred if the Clarifying Order were

9

entered by the bankruptcy court.  Manville II, 340 B.R. at 54, 56; see also Manville IV, 600 F.3d at 143-44.  Chubb and the other objectors argued that the bankruptcy court lacked subject matter jurisdiction to enjoin third parties' Direct Actions and related claims against nondebtors.  Additionally, Chubb objected on due process grounds, arguing that it could not be bound by the Clarifying Order because it had never received constitutionally sufficient notice of the 1986 Orders.  Manville IV, 600 F.3d at 143, 147.

On August 17, 2004, the bankruptcy court rejected the objections and approved all three Agreements.  It also entered the Clarifying Order (the "2004 Orders").  The language of the Clarifying Order was substantially the same as the language contained in each Agreement's appended Exhibit A.  The bankruptcy court concluded that it had authority to enter both the Clarifying Order and the 1986 Orders, and that the Direct Actions -- and related contribution and indemnity claims -- were barred by the 1986 Orders.[5]  Manville I, 2004 WL 1876046, at *26-28 ¶¶ 1-9, *30-34 ¶¶ 17-35.

Chubb and the other objectors appealed.  The district court affirmed the bankruptcy court's order in all material respects.

---

[5] Specifically, the bankruptcy court determined that potential claims by insurers such as Chubb were properly barred by the 1986 Orders.  In re Johns-Manville Corp. (Manville I), Nos. 82 B 11656, 82 B 11657, 82 B 11660, 82 B 11661, 82 B 11665, 82 B 11673, 82 B 11675, 82 B 11676(BRL), 2004 WL 1876046, at *34 ¶ 38 (Bankr. S.D.N.Y. Aug. 17, 2004); see also id. at *33-34 ¶¶ 34-35. Additionally, the bankruptcy court reasoned that a "judgment reduction provision" "protect[ed] the interests of non-settling defendants in the direct action claims so completely as to render their objections to the settlements moot."  Id. at *34 ¶ 38.

10

It concluded that the bankruptcy court had authority to enter the Clarifying Order because it had jurisdiction to enter the 1986 Orders and that the Clarifying Order interpreted and enforced those orders. Manville II, 340 B.R. at 59-67. The district court also reasoned that Chubb, a sophisticated insurer, received sufficient notice regarding its purported claims. Id. at 68. It determined further that, even if notice in the usual sense was lacking, Chubb's claims could be foreclosed upon because of the special nature of the remedial scheme at issue: reorganization of the bankruptcy estate. Id. at 68-69.

The objectors appealed again, and this court vacated and remanded, concluding that entry of the 1986 Orders (as interpreted by the Clarifying Order) exceeded the proper bounds of the bankruptcy court's jurisdiction insofar as they enjoined state-law claims, nonderivative of the debtor's wrongdoing, that did not seek recompense from the Manville corpus. Manville III, 517 F.3d at 61-68. Having vacated on these grounds, this court deemed it unnecessary to reach Chubb's due process argument. Id. at 60 n.17.

The Supreme Court granted certiorari and then reversed. Bailey, 557 U.S. at 137, 147. The Court held that the Direct Actions were -- and always had been -- barred by the 1986 Orders, and it concluded that this court had erred in reevaluating the bankruptcy court's jurisdiction to enter those orders: "the 1986 Orders became final on direct review over two decades ago"; "whether the Bankruptcy Court had jurisdiction and authority to

11

enter the injunction in 1986 was not properly before th[e Court] in 2008 . . . ." Id. at 148.

The Court concluded that the Clarifying Order's entry was a proper exercise of the bankruptcy court's jurisdiction because it "plainly had jurisdiction to interpret and enforce its own prior orders." Id. at 151. The Clarifying Order, therefore, did not expand the scope of the 1986 Orders. The Court did not determine, however, whether any parties in particular were bound by the 1986 Orders, nor did it assess the propriety, as a general matter, of a bankruptcy court enjoining third-party claims against nondebtors that were not derivative of the debtor's wrongdoing. See id. at 155. The Supreme Court remanded for this court to consider whether Chubb was bound by the 1986 Orders and the Clarifying Order. Id. at 155-56.

On remand, this court concluded that Chubb was not bound by the 1986 Orders -- nor, by extension, the Clarifying Order -- because it had not been afforded constitutionally sufficient notice of the 1986 Orders and their attendant proceedings. Manville IV, 600 F.3d at 138, 148-49, 158. Underpinning this holding was the determination that the bankruptcy court interpreted the 1986 Orders to have in personam, not just in rem, effect. Id. at 153-54. This court expressly refused to determine the effect of this holding on the Agreements, however,

12

leaving remaining issues to be resolved by "the parties, with the aid of the bankruptcy court." Id. at 159.[6]

In September 2010, counsel for the Direct Action Plaintiffs, claiming that all the conditions precedent had been satisfied, moved before the bankruptcy court to compel Travelers to make the payments required by the Agreements. Travelers objected, contending only that the breadth and finality conditions precedent to payment under the Agreements were unsatisfied because Chubb was now free to bring claims against it. In re Johns-Manville Corp. (Manville V), 440 B.R. 604, 613-15 (Bankr. S.D.N.Y. 2010).

The bankruptcy court granted the Direct Action Settlement Counsel's motions to compel. See id. at 615. The court concluded that the disputed conditions precedent had been satisfied. It reasoned that: (i) a Clarifying Order of the required breadth had been entered in 2004, see id. at 613-14; (ii) the Order became a "Final Order" when "it was affirmed by the Supreme Court, the court of last resort, in Bailey on June 18, 2009," id. at 614; and, (iii) even after Manville IV's holding that Chubb was not bound by the injunctions due to its lack of notice, the Order enjoined the bargained-for breadth of claims, id. It explicitly noted for the record that satisfaction of the release/dismissal conditions precedent was not disputed by

---

[6] Travelers filed petitions for writs of certiorari and mandamus with the Supreme Court, and the petitions were denied on November 29, 2010. See Travelers Indem. Co. v. Chubb Indem. Ins. Co., 131 S. Ct. 644 (2010).

Travelers. Id. at 608. The bankruptcy court directed Travelers to fulfill its payment obligations immediately. Id. at 615.

Proceedings regarding the propriety and amount, if any, of prejudgment interest then began. Travelers sought to broaden the issues by claiming, for the first time, that the Agreements' conditions precedent regarding disposal of the Direct Actions had not been met. The bankruptcy court rejected this attempt on the ground that Travelers had not asserted this issue in response to the motion to compel. A final judgment was subsequently issued against Travelers requiring it to pay over more than $500 million (more than $65 million of which was prejudgment interest).

The district court reversed on February 29, 2012, holding that the disputed conditions precedent had not been satisfied because (i) the breadth of the language represented in each Agreement's Exhibit A had been narrowed by this court's Manville IV decision; and (ii) the Clarifying Order never became a "Final Order" as defined in the Agreements. In re Johns-Manville Corp. (Manville VI), 845 F. Supp. 2d 584, 592-96 (S.D.N.Y. 2012). The district court therefore did not determine whether other conditions precedent under the Agreements had been satisfied, nor did it rule on matters pertaining to the bankruptcy court's award of prejudgment interest. This appeal followed.

                          DISCUSSION

We review a bankruptcy court's decision that has subsequently been appealed to the district court "independently." In re Baker, 604 F.3d 727, 729 (2d Cir. 2010). In doing so, we

14

accept the bankruptcy court's "factual findings unless clearly erroneous but review[] its conclusions of law de novo." Id.

a) Contested Conditions Precedent

The interpretation of unambiguous settlement-agreement terms is a question of law subject to de novo review. See Tourangeau v. Uniroyal, Inc., 101 F.3d 300, 307 (2d Cir. 1996). The Agreements here are "governed by and construed in accordance with the laws of the State of New York." App. at 239, 276, 312. Under New York law, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (2002). New York law also requires strict compliance with settlement agreements, which are binding and enforceable contracts between parties. IDT Corp. v. Tyco Grp., S.A.R.L., 13 N.Y.3d 209, 213-14 (2009). Further, "[e]xpress conditions must be literally performed; substantial performance will not suffice." MHR Capital Partners LP v. Presstek, Inc., 12 N.Y.3d 640, 645 (2009).

1) Breadth and Finality of the Clarifying Order

The parties primarily contest whether: (i) the breadth of the bankruptcy court's Clarifying Order met the breadth requirement in Exhibit A of the Agreements; and (ii) the Clarifying Order became "final" within the definition of the Agreements. These questions, of course, govern whether the conditions precedent to Travelers' obligation to pay have been satisfied. We conclude that they have been satisfied.

15

A) Breadth

Under both the Statutory and Hawaii Direct Action Settlement Agreements, the relevant condition precedent requires entry of "a Clarifying Order containing prohibitions against Claims at least as broad as those contained in Exhibit A . . . ." App. at 231, 269. Similarly, under the Common Law Direct Action Agreement, the relevant condition precedent requires the "[e]ntry of an order or orders of the Bankruptcy Court, issued pursuant to the [1986 Orders] . . . substantially in the form attached hereto as Exhibit A . . . ." Id. at 307.

We begin by observing that the injunctive language found in each Agreement's appended Exhibit A was included, nearly verbatim, in the Clarifying Order. Travelers concedes as much. But Travelers argues, and the district court agreed, that this court's holding in Manville IV diminished the reach of the Clarifying Order because the order became "jurisdictionally void" as to Chubb, 600 F.3d at 158, which failed to receive constitutionally sufficient notice of the 1986 Orders. Travelers asserts that, consequently, the Clarifying Order does not "contain[] prohibitions against Claims at least as broad as those in Exhibit A," because Chubb could potentially bring a claim against Travelers. Brief for Appellees at 40-41 (internal quotation marks omitted). We disagree.

The Clarifying Order's injunctive language was affirmed in Bailey and has not been altered since. In Bailey, the Supreme Court determined that the bankruptcy court had, in substance,

16

properly interpreted the 1986 Orders in the Clarifying Order with respect to the new, nonderivative Direct Actions: "The Bankruptcy Court correctly understood that the Direct Actions fall within the scope of the 1986 Orders . . . ." 557 U.S. at 148. The injunction that Bailey approved, therefore, bars not only those traditional direct-action claims that sought redress from Travelers based on Manville's own wrongdoing, but also those nonderivative claims against nondebtor Travelers that were the subject of the 2002-2004 settlement negotiations. The Clarifying Order, as a restatement of the 1986 Orders' injunction, precludes claimants who have brought any Direct Actions -- or related indemnity or contribution claims -- from further prosecution of those claims against Travelers. Id. at 149-50; Manville VI, 845 F. Supp. 2d at 595.

Travelers had maintained that the 1986 Orders enjoined the Direct Actions throughout the 2002-2004 settlement negotiations, Manville I, 2004 WL 1876046, at *21 ¶ 93, but its position was not vindicated until Bailey was issued. Bailey thus affirmed the scope of the injunctive language contained within the Agreements' Exhibit As, and the Clarifying Order bars all such claims -- all it was meant to do.

The fact that Chubb may collaterally attack the applicability of the Clarifying Order to actions it might bring -- because it never received constitutionally sufficient notice -- does not alter our conclusion. The error in Travelers' reading of the Clarifying Order stems from the conflation of two

17

separate issues: (i) a party's ability to collaterally attack an order for lack of constitutional notice; and (ii) the integrity of that order and the breadth of claims it bars.

Travelers' reading asks us to adopt an interpretation of the Clarifying Order that could not reasonably have been intended by the parties, whatever Travelers' private hopes and dreams, and is not supported by the language of the Agreements. The interpretation proposed by Travelers would have required the bankruptcy court either to: (i) certify that all potential claimants -- all entities and individuals on the planet, from now until the end of time -- have received constitutionally sufficient notice of the 1986 Orders and their relevant proceedings; or (ii) bar all claimants whether or not they had constitutionally sufficient notice. But neither action could have been intended by sophisticated parties because each would have been well beyond the bankruptcy court's power. Undoubtedly, that is the reason why no such requirement is found in the Agreements' terms or their Exhibit As, whatever Travelers' "secret or subjective intent." Klos v. Lotnicze, 133 F.3d 164, 168 (2d Cir. 1997).

The district court disagreed that Travelers' position required the bankruptcy court "'to enter an order clarifying that all Direct Action claims were enjoined . . . regardless of whether the parties . . . received constitutionally sufficient notice of the 1986 Orders.'" Manville VI, 845 F. Supp. 2d at 593 (quoting Manville V, 440 B.R. at 613). It correctly noted that

18

Travelers is not seeking to enforce an injunction against claimants in an unconstitutional manner but is asking only for a recognition that the disputed condition precedent was never fulfilled. However, this argument, like the argument rejected above, proceeds on the erroneous premise that the Agreements called for a Clarifying Order that bound entities without constitutionally sufficient notice. As such, the Agreements, or the ensuing Clarifying Order, would have been a nullity, and common canons of contract construction call upon us to reject such an interpretation, see Restatement (Second) of Contracts § 203 (1981), which is not a difficult task where, as here, such an interpretation finds no support in the language.

Moreover, Travelers' interpretation amounts to a contractual term that is incapable of ever being fulfilled, because some claimant somewhere on the planet could always appear to attack the order collaterally. See id. § 76 cmt. b. Such an impossible condition -- with no support in contractual language and clearly not intended by the parties -- would have rendered the contract a nullity from its inception. See id.

Travelers' interpretation must be rejected for the additional reason that the parties bargained only for a clarification, not an expansion, of the 1986 Orders, and the jurisdictional reach of those Orders was already at issue at the time of negotiations. Leaving aside the separate issue, discussed supra, of whether the bankruptcy court could have extended the Orders' scope, the portions of the Agreements at

19

issue here evidence no intent by the parties that the Clarifying Order would do so.  Manville IV, therefore, was rooted in an interpretation of the breadth of the 1986 and Clarifying Orders, but that breadth had already been determined to be coextensive with respect to the issues here and could not have been affected by our decision in that case.

Rooted in the 1986 Orders, the Clarifying Order could bar claims only by those parties that received constitutionally sufficient notice of the 1986 Orders and relevant proceedings. As a party to the proceedings leading up to the 1986 Orders, Travelers knew the scope of notice attendant to those proceedings.  For example, Travelers knew that an FCR was appointed by the bankruptcy court to represent the interests of future asbestos claimants, but that no equivalent FCR had been appointed regarding the interests of future indemnity and contribution claimants.

To be sure, had Travelers believed that the bankruptcy court exercised in rem as opposed to in personam jurisdiction in entering the 1986 Orders, it might also have believed that the Clarifying Order's injunction barred Chubb's attack.  See, e.g., Manville II, 340 B.R. at 68-69.  Of course, the in personam nature of the jurisdiction exercised by the bankruptcy court in releasing nondebtors from third-party claims demands that any party barred by the 1986 Orders (and by extension, the Clarifying Order) must have received constitutionally sufficient notice accordant with that jurisdiction.

20

But Travelers recognized the possibility of this: "In its October 26, 2009 post-argument submission, Travelers argued that the bankruptcy court's notice procedures relating to the 1986 Orders were 'wholly consistent' with the exercise of 'both _in rem_ jurisdiction and _in personam_ jurisdiction over all Chubb entities.'" Manville IV, 600 F.3d at 154 n.14. Travelers also conceded that the claims underlying the Direct Actions, which were the subject of the 2002-2004 negotiations, were "unimaginable" during the proceedings that led to the 1986 Orders. Travelers' Reply Brief at 5, Manville V (No. 82-11656-brl); App. at 642.

Nonetheless, the pertinent portions of the Agreements did not provide for an injunction any greater than that contained within the 1986 Orders, nor did they address issues of notice or due process. A court "will not imply a term where the circumstances surrounding the formation of the contract indicate that the parties, when the contract was made, must have foreseen the contingency at issue and the agreement can be enforced according to its terms." Reiss v. Fin. Performance Corp., 97 N.Y.2d 195, 199 (2001). We decline Travelers' invitation to look beyond the Agreements' obvious meaning and to consider Travelers' subjective hopes.

We therefore hold the Clarifying Order contains an injunction as broad as, or substantially in the form of, that contained in the Agreements' Exhibit As.

21

B) Finality

We next consider whether the Clarifying Order became final and unappealable after the Supreme Court's ruling in Bailey. Travelers argues here, and the district court concluded, that when Manville IV "reversed" the district court's decision "as to Chubb," 845 F. Supp. 2d at 594, it rendered the Clarifying Order not final. We conclude, as the bankruptcy court did, that the Clarifying Order became final under the Agreements' definition once Bailey was decided by the Supreme Court.

As noted, under the Agreements, a "Final Order" is an order from which no appeal is taken or one that has been "affirmed by the highest court to which such order was appealed or certiorari has been denied and the time to take any further appeal or petition for certiorari shall have expired." App. at 227–28, 265, 304.

In reviewing the 2004 Orders, Bailey rejected the jurisdictional challenges brought by Chubb and the other objectors. It determined that the 1986 Orders, having been final for decades, were no longer subject to challenges to the bankruptcy court's power to enjoin third-parties from bringing claims that did not affect the res of the bankruptcy estate against nondebtors. Bailey, 557 U.S. at 152 ("[O]nce the 1986 Orders became final on direct review (whether or not proper exercises of bankruptcy court jurisdiction and power), they became res judicata to the parties and those in privity with them . . . ." (internal quotation marks omitted)). The Court also

22

held, just as this court had in Manville III, that the bankruptcy court "plainly had [subject matter] jurisdiction to interpret and enforce its own prior orders." Id. at 151.

Therefore, the pertinent portion of the injunction contained within the Clarifying Order, as an extension of the 1986 Orders, was similarly not subject to challenges regarding the bankruptcy court's subject matter jurisdiction. Once Bailey determined that the bankruptcy court had jurisdiction to interpret the scope of the 1986 Orders, the Clarifying Order became a "Final Order" under the Agreements' definition.

Travelers argues that: (i) Bailey's remand to this court, and (ii) this court's subsequent reversal of the district court in Manville IV, indicate that the Clarifying Order never became final. Neither argument is persuasive.

First, the Supreme Court in Bailey reversed Manville III's vacatur of the 2004 Orders (for the bankruptcy court's purported lack of jurisdiction). This effectively reinstated the 2004 Orders, including the Clarifying Order. The Supreme Court's remand with respect to Chubb's due process argument had no bearing on the Clarifying Order's finality. The case was remanded for a determination of whether Chubb failed to receive constitutionally sufficient notice of the 1986 Orders and whether Chubb was thus bound by them and the Clarifying Order. 557 U.S. at 155. That issue was then decided by this court in Manville IV.

23

Second, while Manville IV reversed as to Chubb, it did not alter any aspect of the Clarifying Order, the meaning of which is discussed in detail above.  The fact that Chubb is not bound by the 1986 Orders does not, therefore, render the 1986 Orders any less "final."  In sum, neither Bailey nor this court's holding in Manville IV deprived the Clarifying Order of finality.

As the Supreme Court recognized, "the 1986 Orders became final on direct review over two decades ago."  557 U.S. at 148. It would defy logic to hold that the Clarifying Order, as an extension of the 1986 Orders, is not "final" simply because Chubb did not receive constitutionally adequate notice of the 1986 proceedings.  If the 1986 Orders are final despite the inapplicability of the orders to Chubb, it follows that the Clarifying Order is just as final.

Therefore, the Clarifying Order became final, as that term is defined in the Agreements, once Bailey was issued.

2) Conditions Precedent Regarding Releases/Dismissals

We next consider the Agreements' conditions precedent that require either the escrowing of a certain number of releases or the dismissal of claims with prejudice.  We hold that Travelers' arguments in that regard are waived.

For Travelers' payment obligation to mature under the Hawaii Direct Action Settlement, plaintiffs must dismiss with prejudice all claims against Travelers.  Under the Common Law Direct Action Settlement Agreement, at least 14,000 general releases must be

24

executed and delivered into escrow before Travelers is required to pay into the settlement fund.

Travelers argues that these conditions precedent have not been satisfied. Appellants assert that Travelers has waived these arguments by failing to raise them properly before the bankruptcy court in its papers in opposition to appellants' motions to compel.

The motions to compel by their very nature, and explicitly to boot, put the various issues regarding satisfaction of the conditions precedent in play. Travelers' opposition to the motions recognized this by claiming that the conditions precedent regarding the breadth and finality of the Clarifying Order were not satisfied. As a result, the bankruptcy court understood, and noted explicitly, that Travelers raised no objection regarding the release/dismissal conditions precedent. It stated:

> Pursuant to the Settlements, Travelers' payment obligations are contingent upon the satisfaction of three conditions precedent. These conditions, stated in general terms, are as follows: (a) entry of an order by this Court that becomes a "Final Order" clarifying that the Direct Actions were, and had always been, barred by this Court's injunction contained in the 1986 Orders . . .; (b) entry of an order, that becomes a "Final Order" approving the proposed Settlements; and (c) the execution and delivery into escrow of a specified number of General Releases . . . . None of the Parties disputes that conditions (b) and (c) have been satisfied.

Manville V, 440 B.R. at 608 (footnote omitted).

25

Once the bankruptcy court determined that the Clarifying Order met the breadth and finality requirements, it ordered briefing and held oral argument regarding the issue of whether plaintiffs were entitled to interest on the settlement proceeds based on Travelers' breach. Id. at 615. The arguments that Travelers sought to raise were that the motions to compel lacked adequate supporting evidence that the release/dismissal conditions had been met.

The bankruptcy court did not rule on the merits of those arguments. At the oral argument, the bankruptcy court noted Travelers' earlier concession that certain conditions precedent had been satisfied: "If I recall back in all of the Sturm [and] Drang here, we had conditions which we'll label A, B and C. And I think Travelers certainly conceded that B and C were met and claimed that A was not met. I opined otherwise. And that's where we stand." App. at 857.

On appeal to the district court, Travelers argued again that the release/dismissal conditions had not been satisfied. The district court did not reach these arguments, having found that the conditions precedent regarding scope and finality had not been fulfilled. See Manville VI, 845 F. Supp. 2d at 596.

These arguments were available to Travelers in the bankruptcy court, and Travelers has not offered any reason for its failure to raise these issues in a timely manner in that court. Although we have discretion to consider a waived argument where necessary to avoid manifest injustice, "the circumstances

26

normally do not militate in favor of an exercise of discretion to address . . . new arguments on appeal where those arguments were available to the [parties] below and they proffer no reason for their failure to raise the arguments below." In re Nortel Networks Corp. Sec. Litig., 539 F.3d 129, 133 (2d Cir. 2008) (internal quotation marks omitted).

In its brief on appeal, Travelers notes only that it raised these issues in the district court and does not claim to have raised them in its opposition in the bankruptcy court to the motions to compel. In opposing those motions, Travelers argued to the bankruptcy court only that the condition precedent regarding breadth and finality called for denial of the motions. Clearly, a failure to satisfy other conditions precedent should have been raised at that time. Instead, Travelers, which has had the benefit of competent, imaginative, and meticulous counsel, waited until the bankruptcy court disposed of the arguments before it on the motions to compel and turned to the prejudgment interest question. Under these circumstances, we see no reason to exercise our discretion to entertain Travelers' untimely arguments. We, therefore, consider these arguments waived.

c) Calculation of Prejudgment Interest

Finally, we consider whether the bankruptcy court's award of prejudgment interest was appropriate and, if so, whether the court erred in determining the date from which the award was calculated.

27

Travelers argues that the award is inappropriate because the Agreements do not include an express provision regarding prejudgment interest. Under New York law, however, the beneficiaries of the settlements are entitled to statutorily prescribed interest: "Interest shall be recovered upon a sum awarded because of a breach of performance of a contract . . . ." N.Y. C.P.L.R. 5001(a). We therefore hold that the bankruptcy court did not err in its decision to award such interest.

Travelers argues further that the bankruptcy court erred in determining the date interest began to accrue. A court's decision to award prejudgment interest running from a date certain is a question of fact, see Ginett v. Computer Task Grp., Inc., 962 F.2d 1085, 1101 (2d Cir. 1992), subject to reversal only if clearly erroneous. Interest accrues "from the earliest ascertainable date the cause of action existed." N.Y. C.P.L.R. 5001(b). The bankruptcy court correctly found that Travelers' payment obligations have been "due and owing since June 18, 2009," when the Supreme Court upheld the Clarifying Order in Bailey. Manville V, 440 B.R. at 615.

Travelers asserts that no "Final Order" as defined by the Agreements could have existed until the proceedings were concluded, which, according to Travelers, was November 29, 2010, when the Supreme Court denied Travelers' petitions for certiorari and mandamus with respect to Manville IV. This argument assumes incorrectly that Chubb's due process claim had any bearing on the finality of the Clarifying Order. As discussed above, however,

28

that is not the case.  The bankruptcy court did not err in its assessment of prejudgment interest.

CONCLUSION

We have considered appellees' remaining arguments and find them to be without merit.  For the foregoing reasons, the order of the district court is vacated, and we remand with instructions to reinstate the order of the bankruptcy court.