*In re: Lawrence R. Mulligan, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of March, two thousand nineteen.

Present:
> JOHN M. WALKER, JR.,
> DEBRA ANN LIVINGSTON,
> *Circuit Judges*,
> KATHERINE POLK FAILLA,
> *District Judge*.[*]

---

IN RE: LAWRENCE R. MULLIGAN, RENEE T. MULLIGAN,

> *Debtors*.

---

LAWRENCE R. MULLIGAN,

> *Debtor-Appellant*,

v.                                                                18-1657

BRUCE K. JALBERT, PAMELA JALBERT,

> *Appellees*.

---

[*] Judge Katherine Polk Failla, of the United States District Court for the Southern District of New York, sitting by designation.

For Debtor-Appellant:                         LAWRENCE R. MULLIGAN, *pro se*, Palm Beach Gardens, FL.

For Appellees:                                BENJAMIN M. WATTENMAKER (John M. Wolfson, *on the brief*), Feiner Wolfson, LLC, Hartford, CT.

Appeal from a May 3, 2018 order of the United States District Court for the District of Connecticut (Meyer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

Debtor-Appellant Lawrence Mulligan ("Mulligan"), proceeding *pro se*, appeals a judgment of the United States District Court for the District of Connecticut (Meyer, *J.*) affirming the bankruptcy court's earlier judgment that a debt owed by Mulligan to Appellees Bruce and Pamela Jalbert ("the Jalberts") was not dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(4). The bankruptcy court held, and the district court agreed, that Mulligan's debt was not dischargeable because it was incurred by conduct constituting defalcation while Mulligan acted in a fiduciary capacity, basing their decisions on a state court decision finding Mulligan liable to the Jalberts for, *inter alia*, conversion and statutory theft. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

#### Background

In 2008, the Jalberts filed a complaint against Mulligan in Connecticut state court in connection with Mulligan's representation of them in a property matter. In 2010, while that action was pending, Mulligan and his wife filed for relief under the United States Bankruptcy Code. The Jalberts initiated an adversary proceeding in bankruptcy court and argued that Mulligan's debt to them was not dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(4). At a June 2010 bankruptcy court hearing, the parties agreed to lift the automatic stay and litigate

2

the Jalberts' state court lawsuit.    Accordingly, in November 2010, the Jalberts filed an amended complaint in the state court action alleging conversion, statutory theft, violation of the Connecticut Unfair Trade Practices Act, fraud, and false pretenses.    In June 2013, the state court found in favor of the Jalberts on all counts except fraud.

The state court made the following factual findings.    Mulligan acted as the Jalberts' attorney between 1995 and 2008.    In 2005, the Jalberts asked Mulligan to represent them concerning an easement on their land, and the parties agreed that, in the event the Jalberts' title insurance company would not pay for the needed representation, the Jalberts would compensate Mulligan with construction services rather than cash.    Bruce Jalbert provided Mulligan with construction work valued at $84,750 between 2005 and 2007.    In 2006, a company sued the Jalberts to obtain use of the easement.    Mulligan contacted the Jalberts' title insurance company and told the Jalberts that it would not provide them with representation.    However, in March 2007, Mulligan received a letter from the title insurance company informing him that it had in fact already hired representation for the Jalberts and would not compensate any other counsel. Mulligan did not show that letter to the Jalberts, instead telling them that he would continue to represent them and that the title company, which had now agreed to pay for the Jalberts' representation, had merely hired an attorney to assist him.

In May 2007, Mulligan asked the Jalberts for $85,000 in order to show the title company that the Jalberts had paid for his work, explaining that he could not make a claim for payment based on the construction services that he had received.    The Jalberts transferred the money with the understanding that it would be returned following settlement of the easement litigation.    The attorney hired by the title company then negotiated a settlement in which the Jalberts received $100,000; the Jalberts gave Mulligan $50,000 from that sum in compensation for the legal work

3

that they believed he had done for them. On the basis of these facts, the state court found that Mulligan had "intentionally and wrongfully" obtained $135,000 from the Jalberts, having "intentionally misled them concerning the $85,000 payment" and "intentionally misled [them] into believing that his services were needed . . . , and that he was entitled to be paid therefor, causing them also to agree that he would receive $50,000 from the settlement." *Jalbert v. Mulligan*, No. UWYCV086001044S, 2013 WL 3388862, at *9 (Conn. Super. Ct. June 11, 2013), *aff'd*, 101 A.3d 279 (Conn. App. Ct. 2014).

The Jalberts moved for summary judgment in the bankruptcy court adversary proceeding. At a January 2015 hearing, the parties agreed that they would not dispute the state court's findings of fact, but only whether those findings satisfied the requirements of 11 U.S.C. § 523(a)(4). In October 2017, the bankruptcy court granted partial summary judgment in favor of the Jalberts. Applying the doctrine of collateral estoppel, the bankruptcy court found that the state court's finding that Mulligan had committed statutory theft compelled the conclusion that he had also committed defalcation pursuant to 11 U.S.C. § 523(a)(4). Accordingly, it determined that Mulligan's debt to the Jalberts pursuant to the state court judgment was not dischargeable in bankruptcy. The district court affirmed the bankruptcy court's decision. Mulligan timely appealed.

## Discussion

"A district court's order in a bankruptcy case is subject to plenary review, meaning that this Court undertakes an independent examination of the factual findings and legal conclusions of the bankruptcy court." *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d. Cir. 2006) (internal quotation marks omitted). The bankruptcy court's conclusions of law are reviewed *de novo* and its findings of fact for clear error. *Babitt v. Vebeliunas (In re Vebeliunas)*,

4

332 F.3d 85, 90 (2d Cir. 2003).

### 1. Collateral Estoppel

Collateral estoppel "'prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim.'" *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 32 (2d Cir. 2017) (quoting *Lighthouse Landings, Inc. v. Conn. Light & Power Co.*, 15 A.3d 601, 613 (Conn. 2011)); *see also Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (federal courts apply the preclusion law of the state in which judgment was rendered). "An issue decided against a party in a prior proceeding may not be relitigated if: (1) it was fully and fairly litigated in the first action; (2) it was actually decided; and (3) the decision was necessary to the judgment." *Trikona Advisers*, 846 F.3d at 32 (internal quotation marks omitted). "An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." *Lighthouse Landings*, 15 A.3d at 613 (internal quotation marks omitted).

The bankruptcy court accorded collateral estoppel effect to the state court's factual findings. Mulligan argues that prior to doing so, the court was required to inquire into the record underlying the state court's judgment to determine whether the issues were fully and fairly litigated and the judgment valid. He further contends that the state court judgment is invalid because it was not supported by the evidence and was based on facts outside the pleadings. As an initial matter, Mulligan waived these arguments when he agreed before the bankruptcy court that the state court's factual findings were not in dispute, and that the only issue to be decided was whether those findings satisfied the requirements of 11 U.S.C. § 523(a)(4). *See In re Johns-Manville Corp.*, 759 F.3d 206, 219 (2d Cir. 2014) (failure to raise an argument in bankruptcy court constitutes waiver, even if the argument was subsequently raised in the district court).

5

Moreover, even absent waiver, Mulligan's arguments lack merit. First, Mulligan misrepresents the state court record. For instance, Mulligan contends that two allegations underlying the state court's judgment—that he failed to inform the Jalberts that their title company had assumed their defense and that he had agreed to in-kind payment for legal services—were not pleaded in the Jalberts' complaint and therefore not fully and fairly litigated before the state court. But these allegations *are* present in the complaint. *See* App. at 86 (Fourth Am. Compl.) (alleging that Mulligan failed to notify the Jalberts that their title insurance company had agreed to defend them and that he agreed to accept carpentry services as in-kind payment). Second, Mulligan asserts that Connecticut law requires an inquiry into the record underlying a state court judgment to confirm whether that judgment is "valid." Mulligan Reply Br. at 2, 3. That assertion misconceives the doctrine of collateral estoppel. Indeed, the review in which Mulligan urges the federal courts to engage—looking to the state court record to determine whether the state court's factual findings were correct—is not a prerequisite to collateral estoppel, but rather precisely the review that this doctrine precludes. *See Trikona Advisers*, 846 F.3d at 32.

### 2. Defalcation under 11 U.S.C. § 523(a)(4)

"Section 523(a)(4) of the Federal Bankruptcy Code provides that an individual cannot obtain a bankruptcy discharge from a debt 'for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.'" *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269 (2013) (quoting 11 U.S.C. § 523(a)(4)). In this context, "defalcation" includes "a culpable state of mind requirement": specifically, "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id.* "Where actual knowledge of wrongdoing is lacking," this requirement is met "if the fiduciary consciously disregards (or is willfully blind to) a substantial and unjustifiable risk that his conduct will turn out to violate a

6

fiduciary duty." *Id.* at 274 (internal quotation marks omitted).

Mulligan argues that, even if collateral estoppel applies, the facts found by the state court do not establish the requisite mental state for defalcation under 11 U.S.C. § 523(a)(4). This argument is meritless. In finding that Mulligan was liable for statutory theft, the state court necessarily found that "with the intent to deprive another of property or to appropriate the same to himself or a third person, [Mulligan] wrongfully [took], obtain[ed] or [withheld] such property from [the] owner." *Mulligan*, 2013 WL 3388862, at *9 (quoting *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 761 A.2d 1268, 1281 (Conn. 2000)). Specifically, the state court found that Mulligan, an attorney, "intentionally misled" the Jalberts, his clients, with the "intent to deprive [them] of property." *Id.* This conduct is an obvious breach of fiduciary duty. *See Beverly Hills Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin,* 717 A.2d 724, 730 (Conn. 1998) (attorney owes fiduciary duties of loyalty and honesty to clients). Thus, the bankruptcy court did not err in deciding that the state court's findings also established that Mulligan possessed the required mental state for defalcation—that is, that he knew, or was grossly reckless with respect to, "the improper nature of [his] fiduciary behavior." *See Bullock*, 569 U.S. at 269.

\* \* \*

We have considered all of Mulligan's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7